UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JAMES H. HIGGASON, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:18-CV-550-JD-MGG |
| | ) | |
| WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |

OPINION AND ORDER

James H. Higgason, Jr., a prisoner without a lawyer, filed an amended habeas corpus petition challenging a disciplinary hearing (MCF 16-12-374) where a Disciplinary Hearing Officer (DHO) found him guilty of threatening prison staff in violation of Indiana Department of Correction (IDOC) policy B-213 on December 28, 2016. ECF 5 at 1. As a result, he was sanctioned with the loss of 30 days earned credit time and a one-step demotion in credit class. *Id.* The Warden has filed the administrative record. Higgason has not filed a traverse and has asked the court to issue its ruling without a traverse. ECF 15. Thus, the case is now fully briefed.

The Fourteenth Amendment guarantees prisoners certain procedural due process rights in prison disciplinary hearings: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence in defense, when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder

of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there must also be "some evidence" in the record to support the guilty finding. *Superintendent, Mass Corr Inst. v. Hill*, 472 U.S. 445, 455 (1985). In his petition, Higgason argues there are four grounds which entitle him to habeas corpus relief.

In the context of a prison disciplinary hearing, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. "In reviewing a decision for some evidence, courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (quotation marks omitted).

> [T]he findings of a prison disciplinary board [need only] have the support of some evidence in the record. This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. Although some evidence is not much, it still must point to the accused's guilt. It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.

*Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (quotation marks, citations, parenthesis, and ellipsis omitted).

Here, Higgason was found guilty of threatening prison staff in violation of IDOC policy B-213. IDOC offense B-213 prohibits inmates from "[c]ommunicating to another person a plan to physically harm, harass or intimidate that person or someone else." Indiana Department of Correction, Adult Disciplinary Process: Appendix I. http://www.in.gov/idoc/files/02-04-101_APPENDIX_I-OFFENSES_6-1-2015(1).pdf.

The Conduct Report charged Higgason as follows:

> On 12/15/16 at approximately 2:35 pm I, Officer F. Schaeffner, was working at the feeding window of Chow [H]all 3. Offender Higgason, James 856635 approached and placed his ID in the diet window and stood to the side. I recalled I had just received another clothing request from him, and informed him I had received it and would be getting him clothing as soon as I could. He replied, "When the f*** is that going to be? Why don't you do your f****** job and give me my clothes." I then told him I was very far behind and to be patient. He stated, "F*** you, you f****** b****. Just do your job and leave me alone." I told him that I was being polite and he needed to do the same. He then stated "Why don't I just kick you in the n***?"
>
> At this point I ordered him to cuff up for threatening staff. The offender refused to comply and stated "And what if I don't?" Officer B. Myers approached and began to speak with him. He attempted to talk the offender into complying. After a moment offender Higgason stated "I'll spit in your face," to Ofc. Myers.

ECF 13-1 at 1.

Officer B. Myers provided the following statement of the incident:

> On 12/15/16 at approximately 1424 I, Officer B. Myers was escorting PHU into Chow Hall 3. Once Offender Higgason, James DOC#856635 reached the diet window, he began a conversation about his clothing order with Officer Schaeffner. Officer Schaeffner explained to Offender Higgason that he was behind around 480 offender clothing orders due to not having any clothing to pass out. Offender Higgason became aggressive due to the answer he received. Offender Higgason told Officer Schaeffner he was

3

> going to kick him in the n*** if he did not get his clothes. At this point in time I came up front the rear of the chow line to assist Officer Schaeffner. Officer Schaeffner told Offender Higgason to turn around to cuff up, Offender Higgason refused. I began talking to Offender Higgason trying to get him to cuff up. However, Offender Higgason was still refusing. Offender Higgason stated he was going to spit in my face and beat my a**. Offender Higgason stated by doing so he would get an outside case and 5 years added to his sentence. I told Offender Higgason to turn around and cuff up. Once Offender Higgason turned around, I grabbed his arm to cuff him up. Offender Higgason pulled away and threw his elbows back at Officer Schaeffner and me. Sgt. Collingsworth grabbed Offender Higgason and placed him on the ground. Once on the ground placed restraints on Offender Higgason. Leg restraints were also applied to Offender Higgason due to continual resistance. Offender Higgason was placed in a wheel chair and escorted to RHU.

ECF 13-4 at 1.

In the first and third grounds of his amended petition, Higgason argues that prison officials violated his due process rights because they failed to follow IDOC policy. ECF 5 at 2-3, 5-6. First, Higgason claims that IDOC policy was violated because the DHO in his disciplinary hearing was merely an "apprentice" as he "had not completed his Department's training for the offender disciplinary process." ECF 5 at 2-3. In other words, he thought the DHO had not meet the "criteria" needed to perform the duties of a hearing officer. *Id*. Second, Higgason asserts IDOC policy was violated because the DHO did not notify mental health staff at the prison about his conduct report prior to his hearing. ECF 5 at 5-6. In this regard, Higgason claims he should have only been given a "written reprimand" for his conduct because he takes medication and undergoes counseling for his mental health issues. *Id*. However, habeas corpus relief can only be granted for "violation[s] of the Constitution or laws or

4

treaties of the United States." 28 U.S.C. § 2254(a). Failure to follow policy is not a constitutional violation. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("state-law violations provide no basis for federal habeas relief") and *Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (inmate's claim that prison did not follow internal policies had "no bearing on his right to due process"). Therefore, Higgason's claims regarding violations of prison policies cannot be remedied in a habeas corpus petition.

In the second ground of his amended petition, Higgason argues that his due process rights were violated because he did not receive notice of the charge at least 24 hours before his hearing. ECF 5 at 3-5. Here, Higgason states that IDOC policy required that his hearing be scheduled no sooner than 24 hours after he received a copy of the screening and conduct reports, unless he agreed to waive the 24-hour notice requirement. *Id*. at 3. Here, Higgason was entitled to notice of the factual allegations of the charge at least 24 hours before the hearing. *Wolff*, 418 U.S. at 564. On December 28, 2016, Higgason was notified of the charge when he received both the screening and conduct reports. ECF 13-1 at 1, ECF 13-2 at 1. In those reports, Higgason was informed of the rule—B-213—he violated as well as the facts underlying the charge. *Id*. For instance, the conduct report stated Higgason had threatened Officer Schaeffner and Officer Myer's statement, which was attached to the conduct report corroborated Higgason's threatening behavior toward Officer Schaeffner. Because Higgason was properly notified of the charge and underlying facts, his due process rights were satisfied.

5

To the extent Higgason claims he did not waive the 24-hour notice requirement, that contention fails. The relevant facts are as follows. When the DHO asked Higgason if he wanted to have the disciplinary hearing early, he stated, "[Y]ou must realize that unless you render a favorable decision today, I will appeal everything that happens." ECF 5 at 3. A fair reading of this statement shows that Higgason implicitly agreed to waive the 24-hour notice requirement. While his statement seems to be predicated on the DHO rendering a favorable decision, he nonetheless implicitly agreed to proceed with the hearing early—waiving the 24-hour notice requirement. While Higgason himself tries to hedge his bets by hinging his waiver on a favorable outcome, there is no constitutional safeguard requiring a favorable decision in return for waiving the 24-hour notice requirement. Higgason further claims that IDOC policy was violated because his waiver was neither documented nor initialed on the screening report by prison officials, but as discussed *supra*, violations of state law do not entitle prisoners to habeas corpus relief. *Estelle*, 502 U.S. at 67-68. Moreover, the court's review of the record shows the DHO listed Higgason's consent to waive the 24-hour notice requirement on the report of disciplinary hearing. ECF 13-3 at 1. Therefore, this ground does not identify a basis for granting habeas corpus relief.

In the fourth and final ground of his amended petition, Higgason claims his due process rights were violated because he was not provided with "cop[ies] of clothing slips from September, 2016, to present." ECF 5 at 6. He complains he requested the slips to prove he submitted one to three clothing requests each week but these requests

6

were left "unanswered" by Officer Schaeffner. *Id*. at 6-7. Prison officials have discretion to "keep the hearing within reasonable limits." *Wolff*, 418 U.S. at 566. A hearing officer may deny witness or evidence requests that threaten institutional goals or are irrelevant, repetitive, or unnecessary. *Piggie v. Cotton*, 342 F.3d 660, 678 (7th Cir. 2003). That is what happened here. The DHO denied Higgason's request for clothing slips because they were irrelevant to the charged offense. ECF 13-2 at 1. While Higgason states the "unanswered" clothing slips establish the "aggravating circumstances" or reason for his anger toward Officer Schaeffner, the slips neither prove nor disprove any part of B-213 as that offense prohibits an inmate from communicating to another person a plan to physically harm that person. Because Higgason has not identified anything from the clothing slips that would prove to be exculpatory or might have aided his defense, this fourth ground does not identify a basis for granting habeas corpus relief. *Piggie,* 342 F.3d at 666.

As a final matter, to the extent Higgason seems to imply in his petition that there was insufficient evidence for the DHO to find him guilty of violating offense B-213, that contention fails. In assessing the sufficiency of the evidence, a conduct report alone can be enough to support a finding of guilt. *McPherson*, 188 F.3d at 786. Such is the case here. In the conduct report, Officer Schaeffner detailed his encounter with Higgason at the feeding window of Chow Hall 3 where Higgason, using vulgar and intimidating language, threatened to kick him. ECF 13-1 at 1. In light of Higgason's aggressive behavior, Officer Schaeffner ordered him to cuff up but he refused to do so. *Id*. Officer

Myers then attempted to assist Officer Schaeffner, but when he approached Higgason, he threatened to spit in his face and beat him up. ECF 13-4 at 1. Officer Myers told Higgason to turn around and cuff up, but Higgason pulled away and threw his elbows back at Officers Schaeffner and Myers. *Id.* A third officer was able to grab Higgason and place him on the ground. *Id.* Given Officer Schaeffner's detailed conduct report documenting Higgason's threatening behavior, along Officer Myers's statement corroborating Higgason's threatening remarks and behavior toward the two officers, there was more than "some evidence" for the DHO to find Higgason guilty of offense B-213. While Higgason claims he never threatened Officer Schaeffner, the DHO was not required to credit or believe his story. *McPherson*, 188 F.3d at 786 (the court is not "required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence."). Therefore, the DHO's finding that Higgason was guilty was neither arbitrary nor unreasonable in light of these facts.

If Higgason wants to appeal this order, he does not need a certificate of appealability because he is challenging a prison disciplinary proceeding. *See Evans v. Circuit Court*, 569 F.3d 665, 666 (7th Cir. 2009). However, he may not proceed in forma pauperis on appeal because pursuant to 28 U.S.C. § 1915(a)(3) an appeal in this case could not be taken in good faith.

For these reasons, James Higgason, Jr.'s amended petition for writ of habeas corpus (ECF 5) is DENIED. Furthermore, Higgason's request for summary ruling (ECF 15) is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED on December 18, 2018

       /s/ JON E. DEGUILIO  
JUDGE  
UNITED STATES DISTRICT COURT